IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

BLANCA G.,[1]

        Plaintiff,

vs.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

Civil No. 17-cv-1123-CJP[2]

## MEMORANDUM and ORDER

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff seeks judicial review of the final agency decision denying her applications for Disabled Widow's Benefits (DWB) and Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for benefits in May 2015, alleging disability as of December 31, 2012. After holding an evidentiary hearing, ALJ P. H. Jung denied the application on December 27, 2016. (Tr. 24-35). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

---

[1] In keeping with the court's recently adopted practice, plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Doc. 26.

## Issue Raised by Plaintiff

Plaintiff raises one issue:

1. The ALJ erred in failing to consider the effects of plaintiff's illiteracy and her inability to speak English on her ability to perform other work.

## Applicable Legal Standards

To qualify for DWB or DIB, a claimant must be disabled within the meaning of the applicable statutes.[3] For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. 20 C.F.R. § 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in

---

[3] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The regulations pertaining to DWB are found at 20 C.F.R. §§ 404.335 and 404.337. The definition of disability is the same for both. See, 20 C.F.R. § 404.335(c), incorporating the definition of disability set forth in the DIB regulations into the DWB regulation. Most citations herein are to the DIB regulations out of convenience.

2

substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. 20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984). *See also Zurawski v. Halter*, 245

3

F.3d 881, 886 (7th Cir. 2001) (Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled…. If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Murphy v. Colvin,* 759 F.3d 811, 815 (7th Cir. 2014). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir.

2010), and cases cited therein.

## The Decision of the ALJ

ALJ Jung followed the five-step analytical framework described above. He determined that plaintiff had not been engaged in substantial gainful activity since the alleged onset date. To be eligible for DWB, she had to have been disabled before the last day of the "prescribed period." He found that date was January 31, 2013. Her date last insured for DIB was December 31, 2013.

The ALJ found that through the prescribed period and the date last insured, plaintiff had severe impairments of diabetes, obesity, and hypertension. He further determined that these impairments do not meet or equal a listed impairment.

The ALJ found that plaintiff had the residual functional capacity (RFC) to do work at the medium exertional level with some physical limitations.

Based on the testimony of a vocational expert, the ALJ determined that plaintiff was unable to do her past relevant work. However, she was not disabled because she was able to do jobs that exist in significant numbers in the national economy.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. In view of plaintiff's argument, the Court will omit a discussion of the medical treatment.

1. **Agency Forms**

Plaintiff was born in 1955 and was 58 years old on the date last insured. A prior application had been denied as of October 8, 2013[4]. (Tr. 239-240).

Plaintiff could not speak or read English. She spoke Spanish. (Tr. 242). She attended school through the second grade. (Tr. 244). She worked from 1991 through 2008 as a machine operator. She operated a machine that made meat casings. (Tr. 250-251).

Plaintiff said she was able to follow written and spoken instructions if they were in Spanish. (Tr. 263).

3. **Evidentiary Hearing**

Plaintiff was represented by an attorney at the evidentiary hearing in November 2016. Plaintiff attended the hearing in person, as did a Spanish language interpreter. The vocational expert testified by telephone. She was on the phone for the entire hearing. (Tr. 42).

Through the interpreter, plaintiff testified regarding her symptoms, medical treatment, and daily activities. (Tr. 46-48).

The vocational expert (VE) then testified. The ALJ asked the VE a hypothetical question which corresponded to the RFC assessment. The hypothetical question asked the VE to assume, among other items, that the person had a second-grade education, but she was not asked to assume anything about the person's ability to understand English. The VE testified that this person could do

---

[4] The ALJ did not mention the prior denial.

plaintiff's past work as a casing machine tender. The VE also identified three jobs that could be done by a person with plaintiff's RFC: dishwasher, hand packager, and production line welder. (Tr. 47-51).

On cross-examination, plaintiff's counsel questioned whether plaintiff's past work would be precluded by the limitation that she was to avoid frequent exposure to hazards such as moving machinery. He did not ask any questions about plaintiff being unable to understand English or being illiterate. (Tr. 52-55).

## **Analysis**

In his decision, the ALJ found that plaintiff was "not able to communicate in English, and is considered in the same way as an individual who is illiterate in English," citing to 20 C.F.R. §404.1564. Plaintiff argues that the ALJ erred because the hypothetical question posed to the VE assumed that plaintiff had a first-grade education but did not assume that she was illiterate *and* unable to communicate in English.

20 C.F.R. §404.1564(b) explains how the agency considers education and ability to communicate in English:

> (b) How we evaluate your education. The importance of your educational background may depend upon how much time has passed between the completion of your formal education and the beginning of your physical or mental impairment(s) and by what you have done with your education in a work or other setting. Formal education that you completed many years before your impairment began, or unused skills and knowledge that were a part of your formal education, may no longer be useful or meaningful in terms of your ability to work. Therefore, the numerical grade level that you completed in school may not represent your actual educational abilities. These may be higher or lower. However, if there is no other evidence to contradict it, we will use your numerical grade level to determine your educational abilities. The term education also includes how well you are able to communicate in English since this ability is often acquired or improved by

7

education. In evaluating your educational level, we use the following categories:

(1) Illiteracy. Illiteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling.

(2) Marginal education. Marginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. We generally consider that formal schooling at a 6th grade level or less is a marginal education.

(3) Limited education. Limited education means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through the 11th grade level of formal education is a limited education.

(4) High school education and above. High school education and above means abilities in reasoning, arithmetic, and language skills acquired through formal schooling at a 12th grade level or above. We generally consider that someone with these educational abilities can do semi-skilled through skilled work.

(5) Inability to communicate in English. Since the ability to speak, read and understand English is generally learned or increased at school, we may consider this an educational factor. Because English is the dominant language of the country, it may be difficult for someone who doesn't speak and understand English to do a job, regardless of the amount of education the person may have in another language. Therefore, we consider a person's ability to communicate in English when we evaluate what work, if any, he or she can do. It generally doesn't matter what other language a person may be fluent in.

(6) Information about your education. We will ask you how long you attended school and whether you are able to speak, understand, read and write in English and do at least simple calculations in arithmetic. We will also consider other information about how much formal or informal education you may have had through your previous work, community projects, hobbies, and any other activities which might help you to work.

Though plaintiff cites the above regulation, her argument ignores its language. She argues that it was error for the ALJ to ask the VE to assume that she

had a first-grade education and not that she was unable to communicate in English. She argues, "A first grade education does not equate to an inability to speak English or read and write."  See, Doc. 17, p. 7.

Section 404.1564(b)(1) defines illiteracy as "the inability to read or write" and provides that the agency considers an illiterate person to be one who "has had little or no formal schooling."  Viewed in this context, the proposition that plaintiff had a first-grade education adequately conveys the idea that she cannot read or write in English.  (She apparently is able to read Spanish, as she indicted she can follow written instructions if they are written in Spanish.)  Plaintiff offers no reason to believe that there is a meaningful difference between inability to read and write and a first-grade education in the context of ability to work.  In other words, 404.1564(b)(1) assumes that a person with little or no formal schooling is no better off, from a vocational standpoint, than a person who cannot read or write English at all.  She points to no authority suggesting that the agency's assumption is not warranted.

The ALJ also did not err in failing to include inability to communicate in English in the hypothetical question.  The hypothetical question must include all of the limitations that the ALJ finds credible; "if the hypothetical posed to the VE does not include all of the claimant's limitations, there must be some amount of evidence in the record indicating that the VE knew the extent of the claimant's limitations." *Murphy v. Colvin*, 759 F.3d 811, 820 (7th Cir. 2014), as amended (Aug. 20, 2014). Here, the VE heard plaintiff testify through a Spanish language interpreter.  The VE must have been aware that plaintiff was unable to communicate in English.

9

Further, plaintiff offers no reason to think that the jobs identified by the VE cannot be done by a person who is illiterate and unable to communicate in English. Plaintiff's own employment history demonstrates that illiteracy and inability to communicate in English are not *per se* barriers to gainful employment. The Court notes that the agency has published a Notice of Proposed Rulemaking proposing to eliminate the education category of "inability to communicate in English" from consideration in disability claims. The Notice explains, "Since we adopted our current rules in 1978, linguistic diversity in the national economy has increased, which has changed the way the inability to communicate in English affects an individual's ability to work." Notice of Proposed Rulemaking, 84 FR 1006, 1008, WL 399445 (February 1, 2019). This proposed change is, of course, just a proposal at this time, but it suggests that an inability to speak English does not mean a person cannot work at the level of substantial gainful employment. Further, plaintiff's counsel did not question the VE at all regarding illiteracy or inability to communicate in English.

Plaintiff has not identified any errors requiring remand or demonstrated that the ALJ's decision was not supported by substantial evidence. Even if reasonable minds could differ as to whether plaintiff was disabled at the relevant time, the ALJ's decision must be affirmed if it is supported by substantial evidence, and the Court cannot substitute its judgment for that of the ALJ in reviewing for substantial evidence. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012); *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## Conclusion

After careful review of the record as a whole, the Court is convinced that ALJ Jung committed no errors of law, and that his findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying plaintiff's applications for disability benefits is AFFIRMED.

The Clerk of Court is directed to enter judgment in favor of defendant.

**IT IS SO ORDERED.**

**DATE: February 12, 2019.**

<u>**s/ Clifford J. Proud**</u>
**CLIFFORD J. PROUD**
**UNITED STATES MAGISTRATE JUDGE**